## CITY OF SAN ANTONIO V. LENA PORTER.

### Decided November 21, 1900.

**1. Municipal Corporation—Failure to Guard Street with Barrier—Proximate Cause.**

Where plaintiff was driving an ordinarily gentle horse along a street exposed to a river's front, and the horse, becoming suddenly frightened, backed the buggy into the river, injuring plaintiff, and which injury would not have occurred had there been a suitable barrier erected between the street and the river, the failure of the city to provide such barrier was the proximate cause of the injury, and it was liable therefor.

**2. Same—Contributory Negligence.**

It was not negligence per se for plaintiff to drive an ordinarily gentle horse along such unguarded street, nor was she necessarily precluded from recovery because the horse took fright, nor because of the fact that she knew the street was defective in having no barrier next to the river, but such facts were matters to be considered with the other facts of the case in determining whether she was guilty of such negligence as would preclude recovery.

**3. Evidence—Leading Question—Immaterial Error.**

Where a party complaining of a leading question was not prejudiced by it, the fact to which it related being proved by other competent evidence, the judgment will not be reversed because an objection to such question was not sustained.

**4. Same.**

The allowance of a leading question which elicited the answer that before the accident occurred plaintiff had the full use of her mental faculties, was not material error, since everyone is presumed to have the full use of their mental faculties until the contrary is shown.

**5. Evidence—Personal Injury—Physicians' Charges.**

In an action for negligent personal injuries plaintiff could testify as to amounts charged by her physicians for treating her for the injuries, and by the druggist for medicine, the reasonableness of the charges being shown by other competent testimony.

**6. Same—Injury to Mental and Nervous Condition.**

Where plaintiff's petition alleged that by reason of the accident and injury she received a severe nervous and mental shock, it was competent for her to testify in regard to her mental and nervous condition after she received the injury.

**7. Same—Opinion as to Horse Being Gentle.**

Where plaintiff's horse became frightened and backed the buggy over an unguarded bank into a river, the opinion of a witness, based solely on the horse's action at the time, as to whether the horse was a safe one for a lady to drive, was not admissible.

**8. Same—Interest of Witness—Immaterial Error.**

Where, in an action of damages for personal injury, plaintiff offered her attorney as a witness, he could be required, on cross-examination, to state whether he had an interest in the recovery, and also the extent of such interest, but a refusal of the court to require him to state the extent of such interest was harmless error where the fact to which the attorney was called to testify was sufficiently established by other evidence.

**9. Municipal Corporation—Defective Street—Charge of Court.**

In an action for personal injury resulting from the failure of a city to erect barriers along a street next to a river bank, an instruction was not erroneous in failing to define under what circumstances it would have been the city's duty to erect such barriers, where the entire charge showed that if the facts admitted were proved, such circumstances were shown as made it the city's duty to have erected the barriers.

**10. Same—Negligence—Charge on Weight of Evidence.**

A requested charge declaring it negligence per se for plaintiff to have driven along the unguarded street with knowledge of its condition, if she ought reasonably

to have avoided doing so, would have been on the weight of evidence, as would also a charge assuming that the plaintiff was wanting in ability or care in driving her horse, or negligent in handling the lines.

**11.  Same—Intervening Act of Third Party.**

Since the intervening act of a third party could not excuse the city for its negligence in failing to erect barriers along the street next to the river bank, a charge instructing a finding for the defendant city if the accident to plaintiff was occasioned by bystanders endeavoring to assist plaintiff by taking hold of the bridle, thereby causing the horse to back over the bank, was properly refused.

APPEAL from Bexar.  Tried below before Hon. J. L. CAMP.

*George C. Altgelt,* for appellant.

*I. B. Henyan* and *Clamp & Harris,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Lena Porter against the city of San Antonio to recover damages for personal injuries caused by the alleged negligence of the latter.

The substance of her allegations is that appellant negligently failed to erect barriers along the bank of the San Antonio River, on the north side of that part of Crockett Street which extends from St. Mary's to Navarro Street, and by reason of such negligence that portion of the first named street was, on the 4th day of March, 1897, in an unsafe and dangerous condition.  That on the day named, while she was seated in a buggy with a child, and driving a gentle and well trained horse along said street, the animal became frightened at a noise made by a passing float, or from some other cause unknown to appellee, and, without negligence on her part, backed her over said embankment, the buggy and horse falling upon and severely injuring her.

The city answered by a general denial, special exceptions, and plead the general issue, contributory negligence, and accord and satisfaction. The exceptions to the petition being overruled, the cause was tried before a jury, and the trial resulted in a judgment in appellee's favor for $5720.

*Conclusions of Fact.*—The evidence shows that the part of Crockett Street extending from St. Mary's to Navarro Street is flanked on the north side by the San Antonio River; that at the time of the alleged accident the street was open to the public, and was much used along its extension between the points where intersected between Navarro and St. Mary's streets.  That the street varied in width, the variableness being caused by the tortuous course of the stream, from 18 to 30 feet; its surface was free from defects and obstructions, and reasonably safe for passage in the ordinary modes of travel.  The distance on a vertical line from its surface to the water of the river is about 10 feet.  The bank, however, next the street is not perpendicular, but in places nearly so, and where the accident occurred slopes from the street about 14 feet to the water's edge, the inclination being about 60 degrees.  No railings or barriers of any kind were erected or maintained for the safety of the

public by the city along the part of the street described between it and the river, and it was obvious to anyone using the street for travel that there were none.

Upon the 4th day of March, 1897, the appellee, a young lady, was driving with ordinary care along the part of Crockett Street before described, in a buggy with a 4-year-old child, when the horse drawing the vehicle, which was gentle and biddable and an ordinarily well trained buggy animal, became frightened, or for some cause temporarily uncontrollable, and backed the buggy with its occupants over the bank into the river. The evidence of three of the witnesses to the accident tends to show that by pulling on the lines, when the horse was in the act of backing, she contributed to the cause of her injuries. But her testimony, which is fully corroborated by that of another eyewitness, shows that she never pulled on the lines, and exercised every effort in her power to prevent the horse from backing the buggy over the bank

The buggy was the property of Mr. Glassburg, appellee's brother-in-law, who presented a claim to the city council for damages to it occasioned by the accident. When his demand was presented to the council, the appellee appeared and testified as to the facts upon which the demand for damages originated. Damages were awarded by the city to Glassburg for the injuries to his vehicle, but such award did not include the damages sustained by appellee on account of her personal injuries, nor was her claim therefor presented to the council at that time.

From the evidence recited we conclude that the jury were warranted in finding the following facts:

1. That the city of San Antonio might have reasonably anticipated the occurrence of such accidents as the one which occasioned appellee's injury to travelers in vehicles, exercising reasonable care, drawn by animals of ordinary gentleness and biddability; that in the exercise of ordinary care for the safety of the traveling public it was appellant's duty to erect barriers along that portion of Crockett Street before described, so as to make it reasonably safe for the prevention of such injuries as were occasioned appellee, and that it was negligence in not doing so.

2. That the horse driven by appellee was one of ordinary gentleness and biddability, was driven and managed by her with ordinary skill and care, and when the danger from his backing the vehicle towards the river became imminent, she used every effort she was capable of under the circumstances to prevent the accident; and said negligence of the city in failing to erect barriers along the bank between it and the river was the proximate cause of appellee's injuries, uncontributed to by any negligence upon her part.

3. That by reason of the negligence of the city the appellee was damaged in the amount found by the jury.

4. There was no accord and satisfaction of said damages or any part thereof by the city or its authorities.

*Conclusions of Law.*—The first, second, third, and fourth assignments of error complain of the court's overruling the general demurrer and special exceptions to appellee's petition, and the twenty-fifth, twenty-sixth, and twenty-seventh urge that the court should have granted a new trial upon the ground that the evidence was insufficient to sustain the verdict. They will be considered together. When a municipal corporation opens a street and invites public travel, it must be made reasonably safe for such use, and if there is a dangerous place, such as a declivity or excavation, so close to the street or the traveled part thereof as to render it unsafe for travel in the absence of a railing or barrier, the want of such railing or barrier constitutes a defect in the highway itself, for injuries from which the municipality is liable. 15 Am. and Eng. Enc. Law, 2 ed., 555, and authorities cited in note 3; Dill. Mun. Corp., 4 ed., sec. 1017.

The question of the necessity of the barrier is generally one for the jury, as is also that of its sufficiency. 15 Am. and Eng. Enc. Law, 4 ed., 456; Burrill Tp. v. Uncapher, 117 Pa. St., 353, 2 Am. St. Rep., 644. However, corporate authorities are under no obligation to provide for everything that may happen on their streets, but only for such things as ordinarily exist, or such as may reasonably be expected to occur. Dill. Mun. Corp., sec. 1015.

In order to recover for an injury alleged to have resulted from the negligence of another, the injury must be the natural and probable consequence of the negligence; and, as otherwise stated, the wrong and the resulting damage must be known by common experience to be naturally and usually in sequence. The damage, according to the usual course of events, must follow from the wrong. 1 Jag. Torts, 74, and cases cited; Gibson v. Canal Co., 36 Am. St. Rep., 802, 26 Atl. Rep., 70; Mayor, etc., v. Dykes, 31 S. E. Rep., 443. To constitute a negligent act the proximate cause of the injury, it need not be the sole cause; but it is sufficient if it is a concurring cause from which such a result might reasonably have been contemplated. Eads v. City of Marshall, 29 S. W. Rep., 171, and cases cited.

To illustrate the applicability of the doctrine of proximate cause to the facts in the case under consideration, we will quote from several of the many cases akin to this, where the principle has been applied. In Eads v. City of Marshall, *supra*, the facts show that plaintiff's wife was traveling along a street in a buggy drawn by a gentle horse, and after she crossed the city bridge the horse took fright at the noise of an engine and backed the buggy off the bridge, and his wife was precipitated into a deep ravine over which the bridge was built. The court says: "The fact that the injury occurred by the backing of the vehicle upon the bridge by the horse, while under fright, after the bridge had been once safely crossed, does not relieve the city of negligence, or deprive the plaintiff of the right to recover. If the city was negligent in allowing the bridge to be in that condition, and that negligence was the sole or concurring proximate cause of the injury, without contributory negligence chargeable to plaintiff, then plaintiff would be entitled to recover

such damages as were sustained. * * * If the noise of the engine frightening the horse would not have caused the injury but for the defective condition of the bridge, then both causes concurring contributed to the injury; and if the city was negligent in allowing the bridge to be in such defective condition, it would be liable for the proximate result of such negligence."

In the case of Olsen v. City of Chippewa Falls, 37 Northwestern Reporter, 575, a team ordinarily quiet and steady, attached to a wagon, was standing in a public street, when they became frightened and unmanageable and backed over the precipice negligently left unguarded by the city, whereby plaintiff, who was in the wagon, was injured, it was held that the frightened and unmanageable condition of the team was not the independent cause of the injury, and that, in the absence of any evidence of contributory negligence, the city was liable, the court observing: "The team instantly and suddenly became frightened by some suddenly appearing object, probably a corn-sheller near the mill, and as instantly and suddenly backed the wagon over the embankment, and the driver was utterly unable to stop them. The plaintiff was wholly without fault, and if the embankment had been properly guarded, no harm would have resulted from the backing of the team. Such a movement of any team would not be at all uncommon under such circumstances, and so the city might have anticipated when it left the steep bank of the creek so unguarded in such a place."

In Kennedy v. Mayor of New York, 73 New York, 366, the plaintiff's horse, while he was backing up his cart for the purpose of loading the same with brick, suddenly became unmanageable, and backed off the dock into East River, and was lost, which would not have occurred if a string-piece had been there, the court says: "The absence of the string-piece must, for the purpose of this action, be deemed to be the proximate cause of the loss. It would be refining quite too much to hold that the sudden backing of the horse, contrary to the will of the owner, was the cause of the accident, so as to relieve the defendant from liability. The city was charged with the duty of keeping the dock in a safe condition, and if, in using it in the customary way, the plaintiff's horse, without his negligence, was lost, the city is liable, although the horse was not at the moment obedient to the will of the owner."

In the case of Morsman v. City of Rockland, 39 Atlantic Reporter, 995, the Supreme Court of Maine, speaking through Mr. Justice Foster, says: "By the decisions not only of our own State, but of Massachusetts, it is the settled doctrine that if a horse well broken and adapted to the road, while being properly driven, suddenly shies and starts from the direct course, he is not in any just sense to be considered as escaping from the control of the driver or becoming unmanageable, if he is in fact only momentarily not controlled; and if, while thus momentarily shying and swerving from the direct course, he comes in contact with a defect in the highway, and an injury is thereby sustained, such conduct of the horse could not be considered as a proximate cause of the acci-

dent, though it may be one of the agencies or mediums through which it was produced, and therefore a recovery may be had for such injury."

We think, therefore, upon principle and authority that the allegations in appellee's petition, as well as the evidence, are sufficient to show that the negligence of appellant in failing to erect and maintain barriers along the side of the street exposed to the river's front was the proximate cause of her injury. Nor can we believe that either the allegations in her petition or the evidence show as a matter of law that appellee was guilty of negligence, either in driving on Crockett Street or in the management and control of the horse. It is not negligence per se for one to drive an ordinarily gentle animal along a street that is unsafe by reason only of there being no barriers constructed there along to guard members of the traveling public from being thrown over a declivity by reason of the horse becoming suddenly frightened and unmanageable. Knowledge of the defective condition of the street imposed upon the appellee the obligation of taking reasonable care to avoid any injuries from it, and was a matter to be considered with the other facts and circumstances in the case in determining whether she was guilty of negligence precluding her recovery. But the fact that she knew or might have known that the street was defective did not necessarily impose upon her the duty of refraining from traveling thereon. 15 Am. and Eng. Enc. Law, 2 ed., 469, 470; Railway v. Medlenka, 17 Texas Civ. App., 621.

The question objected to by the fifth assignment of error is in our opinion not leading. It neither suggests to the witness the answer desired, embodies a material fact, nor admits of an answer by a simple affirmative or negative. Bergen v. Marble Yard, 77 Texas, 55; 3 Jones on Ev., sec. 815. But if it should be regarded objectionable as leading, the record shows that appellant sustained no injury from either the question or its answer, for appellee's diminished ability to perform labor was fully proven by her testimony elicited by questions not complained of, as well as by the evidence of other witnesses. Where manifestly a party complaining of a leading question was not injured or prejudiced by it, a judgment should not be reversed because the objection to such question was not sustained.

Under the sixth, seventh, eighth, ninth, and tenth assignments of error it is contended that the court erred in permitting appellee's counsel to ask her certain questions, and in permitting her to answer them. The questions embodied in all these assignments, except the ninth, related to the charges of the several physicians for services in treating her for injuries sustained by the accident. The following illustrates the character of them all: "What was the charge that Dr. Johnson made for treating you during the period you have spoken of?" Answer: "Dr. Johnson's bill was $125." The objections to the questions and answers were that the testimony was irrelevant and immaterial, and the witness had not qualified herself as being able to testify to the reasonableness of the bills of the several doctors. The appellee was treated for her

injuries by physicians, and the bill presented by each for such services was admissible to show that the services of the physician were not rendered gratuitously, and that she, by reason of her injuries, had incurred the obligation of paying for them. She may not have been qualified to testify as to whether the bills charged for such services were reasonable, nor did she testify that they were. Each of the physicians by whom the services were rendered testified that the amount due him from appellee was such as was stated by her to be his bill, and each testified that his bill for services rendered her was reasonable. Therefore the reasonableness of the physicians' charges appears from the testimony of those who were best qualified to state their value, to which testimony no objection was made by appellant.

The question and answer embodied in the ninth assignment are as follows: "What has been the charge on account of medicines used?" Answer: "Fischer & Davis have a bill against me for $59.50. Mr. Junkind also has a bill for about $20." The objection urged to the question and answer is the same as the one interposed to the other four. Fischer and Junkind each testified to having furnished appellee medicines during the time she was treated for her injuries, of the reasonable value of the amount stated by her to be their respective bills. For the same reason, therefore, we think there was no error in admitting the question and answer complained of by this assignment. If, however, it was error to admit any or all of the answers of the witness complained of in the five immediately preceding assignments, such error is harmless for the reason that the fact of the charges and the reasonable value of the physicians' services, and of the medicines furnished, were testified to and shown by the evidence of the several physicians who rendered the services, and druggists who sold the medicines.

The tenth, eleventh, twelfth, and thirteenth assignments of error relate to the testimony of appellees in regard to her mental and nervous condition after she received the injury complained of. The petition alleged that by being thrown into the river in the manner before stated, she received a serious nervous and mental shock, and we think that the testimony was relevant and material upon this allegation. Her nervous sensations, deranged nervous and mental condition coexisting and contemporaneous with expressions signifying nervous and mental pain resulting from the injuries received, were a part of the res gestae, without reference to the time when the original injury was sustained, and together with her looks, actions, complaints, declarations, and exclamations indicating injury and illness, suffering and pain, mental and nervous derangement, are original evidence. Railway v. Ayres, 83 Texas, 270; Newman v. Dodson, 61 Texas, 95; Rogers v. Crain, 30 Texas, 285.

The answers elicited to the questions complained of as leading in appellant's fourteenth assignment of error prove nothing more than what would have been fairly presumed had the question never been asked; that is, that before the accident occurred she had the full use of her faculties. Every one is presumed to have full use of his mental faculties

until the contrary is shown. Therefore no injury was caused the appellant by the question being leading.

There was no error in the exclusion of the question and answer of the witness Mathews, complained of in the fifteenth assignment. While the witness may have been competent, had he shown a knowledge of the traits and character of the horse the appellee was driving, as an expert to testify whether he was a suitable animal for a lady to drive, yet, knowing nothing of the horse's traits or character, his opinion based solely upon the action of the animal at the time of the accident would have been utterly worthless, and thrown no light whatever upon the question as to whether he was suitable for a lady to drive.

The witness Henyan, one of counsel for appellee, having testified upon the issue of accord and satisfaction that appellee's claim for personal injuries was not included in the demand of Glassburg made upon the council for injuries to his buggy, and that her claim had never in any way been satisfied, was asked by appellant's counsel what interest, if any, he had in the result of the trial. The witness having answered that he had an interest contingent upon her recovery for his fee as an attorney in the case, and that such interest was less than half, was then asked the extent of such interest. This question he refused to answer, unless compelled by the court to do so. The court having failed to direct him to answer the question, appellant excepted to such action and assigns it as error.

The jury have a right to take into consideration the extent of the interest of a witness in determining the measure of credibility which ought to be given to his testimony; and it was proper to show on cross-examination, as was sought to be done in this case, the extent of the witness' interest in the matter in controversy. Cady v. Bradshaw, 5 Law. Rep. Ann., 557. As, however, the burden was upon appellant to show a compromise and satisfaction of appellee's demand involved in this suit, and the evidence introduced by the city upon this issue being wholly insufficient to establish it in appellant's favor, and it appearing conclusively from other evidence introduced by appellant, independent of Mr. Henyan's testimony, that her claim against the city had never been compromised or settled, the error of the court in not compelling the witness to answer the question could not have affected the jury in finding the verdict, and is therefore entirely harmless.

It is urged by the seventeenth assignment that the court erred in the first paragraph of its charge in not defining under what circumstances it would be the duty of the city to erect a barrier or railing on the bank of the San Antonio River. By the paragraph of the charge complained of, before the jury were authorized to find for appellee, they were required to find (1) that the horse which plaintiff was driving backed the buggy in which she was riding over the bank of the river along Crockett Street; (2) that appellant had failed to erect a railing or barrier on the bank of the river along said street; (3) that in failing to erect said railing or barrier, the city was guilty of negligence; (4) that such negligence was proximately the cause of her injury; and (5) that she was not

guilty of any negligence which contributed to her injuries. From the principles of law enunciated in considering preceding assignments, it occurs to us that the charge complained of presents the law upon the issues of fact clearly and succinctly, and demonstrates that, if such facts as were submitted by it were proven, such circumstances were shown as made it the duty of the city to erect barriers and railings for the protection of travelers on the bank of the San Antonio River along said street.

Nor is there any merit in the eighteenth assignment of error, which complained of the court's giving, at appellee's request, special charge number 1. It was not negligence per se, as we have before held upon the authorities cited, for the appellee to drive along Crockett Street, though she may have known of its defect in not having proper barriers to protect persons using it from being injured. Such defect, though it may have been known to her, if she exercised reasonable care in the use of the street, did not preclude her, if she was otherwise entitled, from recovery.

As to whether a party is guilty of contributory negligence, and whether such negligence is the proximate cause of his injury, are generally questions of fact, and become questions of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question. Railway v. Lee, 89 Texas, 588; Haass v. Railway, 57 S. W. Rep., 855. The special charge, the failure to give which is complained of in the nineteenth assignment of error, made it negligence per se for appellee, with knowledge of its condition, to drive upon a defective and dangerous street if she ought reasonably to have avoided it, instead of leaving it for the jury to determine whether such facts constitute negligence and preclude her recovery without regard to whether such acts proximately contributed to her injury. We think, therefore, that the charge was upon the weight of the evidence, and was properly refused.

The special charge, the refusal to give which is complained of in the twentieth assignment of error, is upon the weight of evidence, in that it assumes the appellee was wanting either in ability, skill, or care in driving the horse, and requires the jury to find against her if the accident was due to such lack of ability, skill, or care. Whether she was lacking in ability, skill, or care in driving was a question of fact for the jury to determine, and not for the court to assume the existence of. Besides, the question was properly submitted to the jury in the court's general charge.

The twenty-first assignment of error complains of the court's refusal to give the following special charge: "If, from the evidence, you believe the accident to plaintiff was brought about by plaintiff's handling of the lines, or by the acts of bystanders endeavoring to assist plaintiff by taking hold of the bridle, thereby causing the horse to back the buggy into the river, you will find for the defendant." This charge assumes, as a matter of law, that "plaintiff's handling of the lines" was an act of negligence. As to whether such act was negligence was a question of fact for the jury, to be determined from all the facts and circumstances attend-

ing the occurrence. Besides, a concurrent, coexisting, intervening act of a third party, without which the injuries would not have been received, does not excuse and relieve the city from liability for personal injuries caused by its negligence. Eads v. City of Marshall, supra; 15 Am. and Eng. Enc. of Law, 2 ed., 460.

The special charge, the failure to give which is complained of in the twenty-third assignment of error, like the one complained of in the twentieth assignment, is upon the weight of evidence, in that it assumes want of skill on the part of plaintiff in driving and handling the horse. As to whether she was wanting in skill in driving was a question of fact for the jury to decide, and was properly submitted with the law upon the question in the main charge of the court. We have already considered those assignments which complain of the sufficiency of the evidence to sustain the verdict.

There is no error requiring a reversal of the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.