## Galveston, Harrisburg & San Antonio Railway Company v. Chas. Butshek.

### Decided January 6, 1904.

**1.—Master and Servant—Negligence.**

Evidence considered and held sufficient to show negligence on the part of a railway company in providing a "pit board" on which its employes in a machine shop crossed over a pit or dugout under its tracks which, being too short, slipped off the rail and threw the servant using it into the pit.

**2.—Same—Rules Requiring Servant to Inspect.**

The master can not rid himself of the duty of ordinary care in seeing that appliances, passage ways, etc., to be used by the servant, are in safe condition, by time cards containing rules that the servant shall inspect such appliances before using them.

**3.—Same—Contributory Negligence—Assumed Risk—Proximate Cause.**

Though a board used between the rails might have been so adjusted as not to slip off the rail, still the original negligence of the master in furnishing a board so short as to admit of such result is the proximate cause of the accident and renders him liable unless the servant, by negligence or assumed risk, is debarred from recovering. See evidence held not to establish such defenses.

**4.—Fellow Servants—Machinist Helper.**

A machinist's helper is not of the same grade nor a fellow servant of machinists with whom and under whose orders he works, and can recover from the master for injuries by their negligence.

**5.—Assignment of Error—Propositions.**

An assignment of error based on giving inconsistent charges should show, by the assignment or propositions under it, wherein the inconsistency lies; and not leave the court to study it out.

**6.—Personal Injury—Susceptibility of Injured Party.**

One suffering rupture through another's negligence is not precluded from recovering the damages caused thereby because he was physically susceptible to that injury.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*Newton & Ward* and *Baker, Botts, Baker & Lovett,* for appellant.

*R. B. Minor, Perry J. Lewis,* and *H. C. Carter,* for appellee.

JAMES, Chief Justice.—Plaintiff alleged that he was employed by defendant (the appellant) in its machine shop, as a general helper. That in said shop were three pits or trenches situated under railway tracks about the width of the distance between the rails, and to enable employes to cross said pits, defendant provided and had in use boards known as "pit boards," about twelve inches wide and two inches thick, resting at either end upon the wooden stringers supporting the rails and also upon the flanges of said rails. That at the portions of said pits known as "dugouts," where the wooden stringers were cut away and substituted by iron stringers or support rails known as "guard rails," said pit boards rested at either end upon the balls of the guard rails, the pit boards being designed to be of sufficient length and to be held in place and prevented from slipping from their supports at either end,

by fitting against the ball of the main rail, the purpose of the same being for defendant's employes to cross the pits in passing from one part of the shop to another in the course of their work, and were removable from one place to another.

That on July 16, 1900, in the course of his work, while carrying a heavy jackscrew about 100 pounds in weight across one of the pits over a dugout, and over a pit board placed there for that purpose and resting at either end upon the ball of the guard rails, plaintiff was caused to fall into the dugout by the board slipping and falling from the ball of the guard rail, and thereby received his injuries.

The negligence alleged was that one of the pit boards provided by defendant was too short to span the space and rest sufficiently over the balls of the guard rails to be securely held in such position, and kept from the main rails, whereby on account of longitudinal and lateral play, a slight movement of the board would move its end off its support. That this rendered the pit board insecure and dangerous when in use as a bridge, and rendered the shop not a reasonably safe place for the performance of plaintiff's work, which condition was known to defendant or in the exercise of reasonable care by defendant would have been known to it.

Besides a general denial, defendant pleaded that if the pit board was of insufficient length it had been placed there by plaintiff's fellow servants; that by defendant's rules plaintiff was required to inspect appliances before using them, and if the board, or the boards furnished for use, was of insufficient length and insecurely placed plaintiff could have discovered it by the use of reasonable care; also in terms assumed risk and contributory negligence.

*Conclusions of Fact.*—We conclude, in view of the verdict, that plaintiff's injuries were occasioned by the negligence of the defendant, by failing in its duty to plaintiff to furnish a pit board of sufficient length to make it secure against either end slipping and falling down from the guard rail while in use as intended.

We also conclude that plaintiff was not guilty of contributory negligence, and the facts concerning this board and the danger therein were not so known or obvious to plaintiff as to make the risk an assumed one. Also that the verdict is not excessive in amount.

The first and second assignments assert that there was no testimony which showed that the board in question was over the dugout, but that the undisputed evidence showed it was not over the dugout. The importance of the matter alleged in these assignments seems to lie in the fact that the danger involved in the negligence alleged in the petition, by reason of the shortness or the improper placing of the board, would not have existed if it was anywhere else than over the dugout portion of the trench.

It appears that the case had been tried once before, and there were apparently contradictions between plaintiff's testimony on the former

trial and that on this trial, as to where the board was, whether over the dugout or not. Inconsistencies on the subject between his testimony on the two trials, and inconsistencies, if any, in the testimony he gave · at the latter trial, if any, were matters which addressed themselves to the jury. It is sufficient for us to inquire as to whether or not there was testimony that went to prove that the board was over the dugout. In plaintiff's testimony as collected and presented in appellant's brief there is evidence, if accepted by the jury, which shows that the board was over the dugout at or about the junction of the dugout and another portion of the pit. He is quoted as stating that "the pit board I tried to walk across was resting on iron." This could not have been if at any other portion of the pit than over the dugout, because at the other places it would have rested upon wooden stringers. Again after pointing out on a photograph a certain place as the place where the board was, which was inconsistent with the above, he undertook to correct himself and located the board at the junction above mentioned. This he maintained, though exhibiting some degree of uncertainty about it. He stated that when he went to go upon the board there were wooden stringers to his right, but he did not observe and did not know what was to the left, and he also stated that there was no wooden stringer there; that he now recollected there was not any there, and that he was sure of it. There was other testimony tending to confirm this: First. He stated that the board was lying between the main rails and was about half an inch below the tops of these rails. This could only have been where the guard rail was, that is over the dugout, because if the board lay upon the wooden stringers where there was no guard rail, it would have been at least two inches below the main rail. Second. He stated that when he fell he got up about the middle of the dugout, about two feet from the board and the dugout was shown to be about seven feet in length. Third. The board, it appears, did not drop into the pit, and plaintiff explained that the cause of his fall was that the end of the board opposite him slipped and fell down. As that end must have been caught in the fall, for it did not go into the pit, it would appear that this must have happened where the flange of the guard rail was, because if the end had slipped and gone down anywhere else, the board must necessarily have gone into the pit. The flange was about four inches below the top of the ball of the guard rail, and this shifting of the board suddenly, considering the weight upon the board, was calculated to cause plaintiff to lose his balance and fall. The tendency of this end of the plank to slip from the ball of the guard rail and drop down on the flange, if the end toward plaintiff was close to the ball of the main rail opposite, was testified to by defendant's witness Weimer, and he testified also that if the end of the board slipped and fell and was caught, it must have occurred over the dugout. In addition to this plaintiff might be excused in the eyes of the jury from not knowing the minute details of his surroundings, or from not accurately observing or relating the precise situation in reference to the position of the

board. The fall, if it occurred as he relates, was sudden and unexpected, and he testified that he had made no measurements in the shop where he was hurt, because he was refused permission to go there to do so.

The assignments are overruled.

The third assignment asserts that the undisputed evidence shows that it was plaintiff's duty to see that the pit board was properly placed and safe for him to cross over on, and that in failing to see that it was properly placed he was guilty of contributory negligence. The fourth is that the verdict was without evidence to support it in that the pit boards were safe and of sufficient length if properly used, and that the accident was due to his want of care in properly adjusting it and in failing to see that it was so adjusted that he could safely use it. The fifth charges in addition to what is contained in the fourth that the undisputed evidence shows his want of care, and also shows that he assumed the risk in using it in the manner he did. The eighth alleges that the undisputed evidence shows that if the board was too short, it was a matter that was obvious and patent, as well as the danger accompanying its use and he therefore assumed the risk.

Plaintiff's duty to inspect the board, and its placing, is based upon instructions or rules contained in time cards given to employes which were signed and turned in every night. They instruct the employe to be very careful and to make a test of all implements and everything used before using same, and also contained this injunction: "Examine carefully scaffolding, tackle, and all other appliances before trusting them." Plaintiff was familiar with these rules. The duty of inspection of appliances, etc., for the safety of the servant using them is not transferable and can not ordinarily be shifted from the master to the servant. Plaintiff was not engaged to inspect appellant's appliances and premises. He was employed as a general helper about the shop. While so occupied the law imposed upon defendant the duty of ordinary care in seeing that the appliances, passage ways and places used by him were safe, as a part of the relation existing between them. This duty defendant could not rid itself of by a general rule or command that the servant himself should perform it. Bookrum v. Railway Co., 57 S. W. Rep., 919. Plaintiff's failure to see that the board was of proper length or properly in position was not contributory negligence as a matter of law by reason of said rules.

The only issue as to defendant's negligence submitted was in respect to the board being too short for the safety of employes having occasion to use it. It appears that if the board had been adjusted so that its ends extended an equal distance over the balls of the guard rails, it would probably not have slipped as this one did. So that its being placed, or its having come to be conditioned as it was in the course of its use, so as to have but little lap over the rail on the side opposite plaintiff as he walked upon it, doubtless had something to do with its falling at that end. Nevertheless the original negligence, if any, in

furnishing a board so short as to admit of that result in its use would be a proximate cause of the accident, and render defendant liable, unless by negligence of plaintiff in some form, or by the rule of assumed risk, he is debarred from recovering.

As to assumed risk: Plaintiff had only worked in the shop three weeks. He testified that the machinists carry the planks to the pits and move them around, and that he had never moved one of them himself, nor put one of them across a pit; that there was always one there when he crossed a pit, and he always crossed wherever the board was. He never had to put one across a pit, and never saw one of them except across a pit. That he did not know how long they were. He had never known one to fall. That when he approached the board for the purpose of carrying the jackscrew over, it was lying perfectly level between the main rails; that he could not see how much lap it had over the opposite rail; that the thickness of the board (about two inches) prevented him from perceiving the lap it had there, and that the upper surface of the board was only about half an inch below the top of the main rails; therefore the difficulty in the way of his detecting at a glance, or at all before going upon the board, that it had very little lap and was liable to work off, is apparent. Besides this, there was evidence that the light at that place was deficient. This state of testimony did not admit of holding that plaintiff must have had such knowledge of the circumstances and danger that he assumed the risk as a matter of law.

Plaintiff's testimony was also such as precluded the assumption by the court of the fact of contributory negligence. Nor would the testimony have warranted its assuming that plaintiff was not injured by reason of the board in question, but received his injury by tripping and falling over another board, that defendant furnished him a reasonably safe place to work, and that there was no negligence on the part of the defendant in reference to the board, nor the fact that the board was so placed that it could not have fallen as alleged, nor the fact that the board upon which plaintiff walked was not over the dugout. Therefore we overrule the ninth, tenth and twelfth assignments.

The tenth assignment is that the undisputed testimony shows that if the pit board was negligently placed over the pit as claimed, it was the act of a fellow servant. This issue was submitted by the court to the jury in a very general way by a charge asked by defendant. This, however, would not preclude defendant from claiming exemption from liability if all the testimony showed that the act was that of a fellow servant of plaintiff, the question having been raised in the motion for new trial. Appellee asserts that the undisputed evidence shows that it was not the act of a fellow servant. We do not think we need examine the record further than to ascertain if enough appeared to raise the issue. Plaintiff testified that he was employed as a machinist's helper; that the only other helpers employed in the shop were two colored men. In all there were about fifteen men working on stationery machines, about fifteen machinists, about forty-five men altogether. That his duties were to

clean engines and help machinists and assistant machinists, including those working on stationary machines. That everybody in the shop had control over him from the foreman down, except the colored helpers, and with these he had no relations and did not work with them and never had. Appellee's brief states that no effort was made to contradict this testimony of plaintiff, but whether this be so or not, his testimony on the subject was sufficient at least to require us to overrule the assignment which asserts that the undisputed testimony showed that the act complained of was that of plaintiff's fellow servant.

Under our statute plaintiff was not of the same grade as the others in the shop, excepting the two helpers, and with these he says he never worked. He certainly was not working with them at the time and place nor upon the same piece of work. Long v. Chicago, R. I. & T. Ry. Co., 94 Texas, 53. It is true that he testified he was employed to do the same character of work as they, that is, whatever they were asked to do; that at night they together put up the tools, and all swept out the place. His testimony also tended to show that the machinists were the ones who moved the pit boards around, and not the helpers. He had seen the machinists put the pit boards across the pit, but had never seen the helpers do so.

The thirteenth assignment complains of the refusal of a charge which would have assumed that defendant was not guilty of negligence in reference to the manner in which the board was placed. Consistently with what has already been said, this assignment must be overruled.

The fourteenth alleges that the main charge and special charge number 8, asked by defendant, were inconsistent, and the inconsistency prejudicial to defendant. There being no proposition in the assignment or elsewhere presented under the assignment, we would have to study out for ourselves the inconsistency, if any, intended and the legal proposition sought to be invoked. Therefore we must decline to consider the assignment.

The fifteenth must be overruled, from what has already been held in this opinion. The propositions that there is absolutely no evidence that defendant placed across said pit the pit board; that the undisputed evidence is that the board was placed either by plaintiff or by a fellow servant, and that the board was not too short for reasonably safe use, can not be sucessfully maintained.

We are unable to condemn the verdict as excessive. The fact that plaintiff was physically susceptible to rupture is not one that can avail defendant, if this fall occasioned the rupture, which the jury could have found was the case. Plaintiff was 32 years of age, and according to the testimony the injury was permanent and very materially affected his capacity to labor, and either caused him inconvenience and suffering or was liable to bring on suffering at any time from exertion. There was testimony that hernia incapacitates a laboring man like plaintiff from the performance of physical labor from one-half to three-fourths. He

was earning at the time $1.40 a day. There was also testimony that a man with hernia is in constant danger and in daily and hourly dread.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

The testimony is in material respects different from what it was on the previous trial. The opinion on rehearing on that appeal, reported in 66 S. W. Rep., 337, shows the final conclusion of the court to have been that the evidence failed to show that the board in question was over the dugout, but showed that it was over the other portion of the pit. This is not the condition of the testimony in the present record.

Again, in the opinion referred to stress was laid on the fact that if the board was over the dugout, its length was such that if properly and equally adjusted it would have had a lap over such guard rail of as much as 2½ inches; testimony here makes it appear that the lap would not exceed 1 3-16 inches. In the course of its use it is very much more probable that the adjustment would be disturbed on one side or the other, permitting one end to have little or no rest on a guard rail.

As the evidence is here, we are unable to say that it is evident the accident grew solely out of the careless way in which the plank was placed, instead of the unsafe and insufficient length for the purpose intended.

Writ of error refused.